IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRYAN L. TOMSON,                          )
                                          )
                Plaintiff,                )
                                          )
v.                                        )        Case No. 07-2506-CM
                                          )
THE WEITZ COMPANY, L.L.C., et al.,        )
                                          )
                Defendants.               )

## ORDER

This is a personal injury case.  The plaintiff, Bryan L. Tomson, alleges he was injured while a passenger in an automobile collision on October 28, 2002, on a street near a retirement community construction site in Lenexa, Kansas.  Plaintiff's complaint (doc. 1), very highly summarized, asserts a product liability claim against defendant Ford Motor Company ("Ford"), based on the contention that a supplemental inflatable restraint (air bag) system was defective.  Plaintiff also asserts negligence and public nuisance claims against defendant Weitz Company, L.L.C. ("Weitz"), based on the contention that Weitz or its subcontractors tracked mud and other debris onto the street near the construction site, which contributed to cause the subject collision.

The final pretrial conference in this case is set for October 17, 2008,[1] which is approximately one week away (*see* doc. 81).  This order will address three of the motions

---

[1] At the time the instant motions were filed the pretrial conference was scheduled for October 14, 2008.  Upon the unopposed informal request of defendants, the pretrial conference has been continued to October 17, 2008.

that are pending before the undersigned U.S. Magistrate Judge, James P. O'Hara.  The first motion was filed by plaintiff on September 24, 2008, seeking to compel Ford to produce certain documents and electronically stored information (**doc. 125**).  The second motion was filed by Ford the same day, asking the court to strike plaintiff's motion to compel as untimely, based on the deadlines that were set in prior orders and that were missed by plaintiff (**doc. 127**).  The third motion was filed by plaintiff on September 27, 2008, by which he seeks a variety of extensions, including but not limited to the deadline to file his motion to compel against Ford, i.e., plaintiff also requests more time to assert technical objections to Weitz's expert witness disclosures, more time for plaintiff to disclose rebuttal expert testimony, and finally an extension of the October 3, 2008 discovery cutoff (**doc. 135**).

For the reasons explained below, plaintiff's motion (doc. 135) for yet another extension of his deadline to seek to compel discovery from Ford is denied, as are all of the other requested extensions.  Plaintiff's motion to compel discovery from Ford (doc. 125) is denied as untimely.  And Ford's related motion to strike (doc. 127) is granted.

The relevant procedural background of this case unfortunately is rather involved.  But this background is critical for one to understand the court's frustration with plaintiff's counsel, John B. Gage, II, and to understand the court's ultimate rulings.

On September 29, 2008, because of the rapidly approaching discovery cutoff, an order (doc. 136) was entered expediting the response and reply brief deadlines with regard to plaintiff's above-referenced motion for various extensions.  Ford and Weitz timely filed separate responses on September 30, 2008 (docs. 146 & 150).  Instead of timely filing a reply

brief by October 1, 2008, which of course is an optional brief under the court's rules,[2] Mr. Gage in effect filed a motion for an extension, which he chose to style as a motion for reconsideration of the court's order expediting the briefing (*see* doc. 151).  In any event, during a status conference held with counsel on October 1, 2008, in the absence of any objection by either defendant, the court granted the motion for reconsideration and granted Mr. Gage precisely the relief he had requested (doc. 154, at 2).[3]  The court directed Mr. Gage to file plaintiff's reply brief by 5:00 p.m. on October 2, 2008 and specifically cautioned him that no further extensions of this deadline would be granted.[4]  On October 2, 2008, just prior to 5:00 p.m., Mr. Gage filed yet another motion seeking an additional seven hours to file his reply brief (*see* doc. 154).  The court summarily denied this last motion on October 3, 2008, for two reasons: (1) because Mr. Gage had failed to show good cause for any further extension that could not reasonably have been anticipated during the October 1 status conference; and (2) because the motion was essentially moot, as Mr. Gage did not even file anything on plaintiff's behalf within the seven additional hours Mr. Gage previously had requested and obtained (*see* doc. 157).

Stepping back even a bit further, the record reflects that, on August 12, 2008, at 12:26

---

[2] *See* D. Kan. Rule 7.1(c).

[3] In its order dealing with the October 1, 2008 status conference (doc. 154), the court stated it would set briefing deadlines later with regard to plaintiff's motion to compel (doc. 125) and Ford's related motion to strike plaintiff's (doc. 127) *only if* the court found good cause to grant plaintiff's motion for extensions (doc. 135). On September 25, 2008, the court had sua sponte suspended  the briefing deadlines on those two motions (doc. 131).

[4] *Id*.

a.m., Mr. Gage filed an unopposed motion (doc. 96) for an extension to August 25, 2008, to file a motion to compel regarding discovery requests served on Ford. In this motion, Mr. Gage acknowledged that, pursuant to the scheduling order, the motion to compel should have been filed on August 11, 2008, but was filed "after midnight" due to the fact that "his computer system froze when he hit save." Later in the day on August 12, 2008, the court entered an order (doc. 98) granting the motion.

On August 25, 2008, one minute before midnight, Mr. Gage filed a second motion (doc. 104) seeking an extension to September 2, 2008 to file his motion to compel. Mr. Gage stated that he was unable to reach Ford's counsel to see if Ford would agree to the motion, which considering the late hour at which the motion was filed, is not very surprising. Regardless, in this motion, Mr. Gage claimed the further extension was necessitated by the fact that "his office computer had been infected with a virus" and he was forced to clean off the old drive and reload the operating system (doc. 104, at 3). In response to an email from the court, Ford indicated it did not oppose plaintiff's requested extension. Therefore, on August 26, 2008, the court entered an order (doc. 105) granting the extension.

On September 2, 2008, just before midnight, Mr. Gage filed a third motion (doc. 112) seeking an extension until September 8, 2008 to file his motion to compel. Mr. Gage again stated that he was "unable" to reach Ford's counsel prior to filing the motion. In this motion, Mr. Gage claimed that Ford had faxed him a response to his email detailing the insufficiencies in Ford's objection to the discovery requests, but his secretary,

who was busy on several matters at the end of the day on Friday

> [August 29, 2008], did not advise Plaintiff's counsel that a
> facsimile (which do not print out automatically on Plaintiff's
> counsel's system, but which must be printed out from a registry
> of facsimiles received by his secretary) had been received from
> defense counsel at 4:44 p.m.[5]

Mr. Gage claimed he did not discover that Ford's counsel had responded until 6:30 p.m. on

Tuesday, September 2, 2008, at which time he was busy with a client in another case.  Mr.

Gage claimed he needed the additional time to evaluate Ford's response.  The court contacted

Ford's lawyer by email to see if Ford intended to oppose plaintiff's motion.  Ford responded

that it would be filing a response the following day, which it did (doc. 115).  In its response,

Ford argued that, after plaintiff's second request for extension, defense counsel had advised

Mr. Gage that they would not agree to any further extensions.  Ford also argued that plaintiff

had had ample time to confer prior to the deadline for filing his motion and, therefore, the

requested extension should be denied.  On September 19, 2008, after awaiting a reply by

plaintiff, but seeing none, the court entered the following text order through the Electronic

Case Filing System ("ECF") (doc. 121):

> ORDER granting in part and denying in part [112] motion by
> plaintiff for extension of time to file motion to compel discovery
> from defendant Ford Motor Co.  The record reflects that, on
> 9/2/08, plaintiff asked for an extension of 4 days (i.e., which
> under Fed. R. Civ. P. 6 would run through 9/8/08) in which to
> file his motion to compel.  It is now 9/19/08 and notably
> plaintiff has not filed any motion to compel, even conditionally.
> It could therefore be inferred that the previously requested
> extension is moot.  Regardless, **any motion to compel the
> subject discovery shall be filed by noon on 9/23/08.  No**

---

[5] Doc. 112, at 3.

**further extensions of this deadline will be granted under any circumstances.**  And none of the parties should infer from this ruling that the court is inclined to extend the existing 10/3/08 discovery completion deadline. (Emphasis added.)

On September 24, 2008, at 12:06 a.m. (i.e., six minutes late, despite receiving not just one but three separate extensions), Mr. Gage finally filed plaintiff's motion to compel discovery from Ford (doc. 125).  But it was not until 1:26 p.m. that day, almost thirteen and a half hours after filing the motion, that Mr. Gage filed the exhibits in support of the motion (doc. 126).  In the "Addendum" to which the exhibits were attached, Mr. Gage stated:

> Thereof were it not for the fact that the Court's ECF webpage froze up so thoroughly when Plaintiff's counsel attempted to file that motion at 11:55 p.m. on September 23, 2008, that it also somehow prevented his Windows Task Manager from opening so that he could not exit from the ECF window and start all over, causing him to become trapped in the ECF window for at least ten (10) minutes.  After finally managing to extricate himself from the Court's ECF site, he was forced to attempt, futilely, to file the Motion alone in timely fashion, although Plaintiff will and does suggest to the Court that such failure of the Court's ECF site causing Plaintiff's Motion to be filed 6 minutes past midnight was precisely the sort of technical failure referred to in D. Kan. Rule 5.4.11 justifying "appropriate relief from the court." *Id.*[6]

Later that day, Ford filed its motion requesting that the court strike plaintiff's motion to compel as untimely (doc. 127).  On September 25, 2008, as earlier indicated, the court entered the order (doc. 131) suspending further briefing on the motion to compel and the motion to strike.

---

[6] Doc. 126, at 1-2.

The court initially notes that since the scheduling order was entered in this case on January 17, 2008 (doc. 15), Mr. Gage has filed no fewer than fifteen separate motions seeking extension of various deadlines (docs. 22, 32, 39, 43, 45, 59, 67, 69, 75, 79, 96, 101, 104, 112, & 135.). In these motions, Mr. Gage provides a variety of excuses for seeking the extensions, including but not limited to problems with his computer, support staff, fatigue, responsibilities on other cases, health issues,[7] and emergency family matters.[8]

Mr. Gage's above-described excuses are not unique to this case. Mr. Gage has used these excuses, in various forms, in other cases in this court.[9] In the *Steinert v. Winn Group,*

---

[7] "[H]e [Mr. Gage] suffers from hyperfocused Adult ADD, PTSD, OCD, and chronic fatigue, all of which, except the underlying ADD, which metamorphosed into hyperfocused ADD due such experience, resulted from his having been the subject late last fall of a contract killing which wound up becoming armed extortion involving his having to withdraw substantial funds from his checking account at gunpoint and deliver them to his assailant, after which he was kidnaped at gunpoint and forced to drive to Cameron, Missouri, then back to Liberty before he was released." Doc. 39, at 2.

[8] "Plaintiff [Mr. Gage] has five (5) pages of his memorandum in opposition fully drafted, but based upon an unexpected interruption this evening in the form of a conference call with his brother and sister about what to do with respect to the fact that his mother, who has Alzheimer's as well as a love for the great out-of-doors and exercise, had gotten herself lost in Lawrence after leaving the assisted living center in which she is confined without permission for the umpteenth time, and the center had decided to expel her. Were it not for that rather lengthy conversation about what to do with his mother, counsel for Plaintiff would have had the memorandum fully drafted in timely fashion, and will file the memorandum as expeditiously as possible, hopefully tomorrow." Doc. 59, at 2.

[9] *See, e.g., Walls v. Int'l Paper Co.*, No. 99-2048, 2000 WL 360115, at *1 (D. Kan. Mar. 13, 2000) ("The court remembers the litany from prior motions. Ms. Walls's counsel [Mr. Gage] has been plagued with computer problems. These problems, compounded by the press of work, and time constraints during the holiday season have made timely response impossible."); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1217-18 (10th Cir. 2006) ("The requests cited Gage's problems with support staff, computers, office equipment, 'and other problems too numerous to detail,' . . . as well as family illnesses, fatigue, personal doctor

*Inc.*,[10] the Tenth Circuit Court of Appeals upheld the finding of Hon. Carlos Murguia, U.S. District Judge (who also happens to be the presiding district judge in the case at bar), that the imposition of sanctions was appropriate against Mr. Gage for his numerous and predominately untimely requests for extensions.[11]  In *Steinert*, Mr. Gage sought at least fifteen separate extensions of time.  In the underlying district court opinion in *Steinert*, Judge Murguia pronounced:

> Although defendants' counsel did acquiesce to many of the requested extensions, plaintiff's counsel's delay in timely complying with the deadlines set out in this case resulted in a multiplication of the proceedings for approximately 495 days-for more than one full year.  Delay of this magnitude should not go unnoticed by the court.  Although the court appreciates the personal difficulties plaguing plaintiff's counsel during the pendency of this litigation, the court cannot allow its sympathy for plaintiff's counsel to dictate the application of § 1927 attorneys' fees.
>
> It is clear that plaintiff's counsel's requests for approximately 495 days of additional time to comply with court mandated deadlines multiplied the proceedings in this case.  Moreover, it is clear that these requests for more time resulted in an increase in the cost of the proceedings to defendants who were required to contemplate and respond to the requests, and in some instances, file papers seeking the court to compel plaintiff's counsel's compliance. In addition, the court finds that this conduct of plaintiff's counsel is easily characterized as unreasonable and vexatious.  *Shields*, 120 F.R.D. at 127.  The court finds this conduct represents unprofessional conduct which

---

visits, responsibilities on other cases, the complexity of the instant case, attendance at a legal convention, and a camping trip with his son.")

[10] 440 F.3d 1214 (10th Cir. 2006).

[11] *Id*.  at 1226.

has burdened opposing counsel and this court.  Where plaintiff's counsel was unable to prosecute his client's case, he had an obligation to remedy that situation rather than seek continuous delay of the court's proceedings.  The court finds that plaintiff counsel's overall pattern of conduct "demonstrates a reckless disregard for his duties to this court." *Julien v. Zeringue*, 864 F.2d 1572, 1576 (Fed. Cir. 1989).[12]

In *Leaman v. General Electric Co.*, another case in which Mr. Gage represented the plaintiff, Hon. Kathryn H. Vratil, U.S. District Judge, cited *Steinert*, and noted:

> plaintiffs' counsel [Mr. Gage] has become notorious for "extension-seeking campaigns." . . . His pattern of excessive and tardy extension requests is well known to this Court, and its recent experience in *Lynn v. Gen. Elec. Co.*, Case No. 03-2662, has forced it to adopt a firmer resolve to curtail (and if necessary punish) counsel's standing disregard for the orderly process of justice.[13]

In *Whitfield v. Clippinger*,[14] again a case in which Mr. Gage represents the plaintiff, Judge Murguia recently addressed a third motion for extension filed by Mr. Gage.  After referencing his ruling in *Steinert* and Judge Vratil's ruling in *Leaman*, Judge Murguia stated "[s]uch [extension seeking] campaigns will not be tolerated in this court."[15]  Judge Murguia granted Mr. Gage an extension but cautioned, "ANY MOTION BY PLAINTIFF FOR A FURTHER EXTENSION OF TIME WILL BE SUMMARILY DENIED.  IF PLAINTIFF DOES NOT FILE HIS RESPONSE BY SEPTEMBER 15, 2008, DEFENDANTS' MOTION

---

[12] *Steinert*, No. 98-2564, 2003 WL 1342974, at *5 (D. Kan. Mar. 14, 2003).

[13] No. 05-2565, doc. 18, at 2 (D. Kan. Mar. 15, 2006).

[14] No. 08-2085, doc. 35 (D. Kan. Sept. 11, 2008).

[15] *Id*. at 2.

WILL BE CONSIDERED AND DECIDED AS AN UNCONTESTED MOTION."[16]

Notwithstanding this admonition, plaintiff filed another motion for extension on September

16, 2008.[17]  Upon receipt of this motion, Judge Murguia entered the following text order:

> The court is sympathetic to plaintiff's reasoning for his motion
> for extension of time. However, it is unfair to the opposing party
> to continue delaying the proceedings by granting multiple
> motions to continue filed by plaintiff. As the court set forth in its
> previous [35] order, plaintiff was warned that any further
> motions for extension of time to file a response as to [17]
> motion to dismiss plaintiff's first amended complaint would be
> summarily denied. The court would also like to point out that
> plaintiff's motion for extension of time was filed one day after
> the response deadline. Therefore, the court is denying plaintiff's
> motion for extension of time based on its previously filed [35]
> order.[18]

In ruling motions for modification of the scheduling order (docs. 67 & 79) filed by

Mr. Gage in the case now before the court, the undersigned noted:

> The court recognizes and appreciates defendants' frustration
> with the continued extensions sought by plaintiff, and the far
> less than diligent manner in which plaintiff's counsel seemingly
> has approached all aspects of this case.  Plaintiff clearly has not
> shown good cause for the requested extensions. But mindful that
> ultimately a real live client's case is at stake, the court will
> extend the deadlines for designating expert witnesses and for
> completion of discovery. To assure defendants are not materially
> prejudiced as the result of the court granting the requested
> extensions, the court will also reschedule the pretrial conference
> and extend the dispositive motion deadline.

---

[16] *Id.*

[17] *Id.*, doc. 36 (D. Kan. Sept. 16, 2008).

[18] *Id.*, doc. 37 (D. Kan. Sept. 16, 2008).

Plaintiff is admonished that he needs to get more organized on his handling of this case, and to do so immediately. From what the court can discern, if counsel were to spend half the time he has spent drafting long-winded extension motions on actually getting this case ready for trial, both he and his client would fare much better. In any event, should plaintiff's counsel continue to miss deadlines with the truly pitiful excuses offered to date, the undersigned magistrate judge will have no recourse but to file formal disciplinary complaints with appropriate federal and state authorities. The undersigned is concerned that plaintiff's counsel, whether on account of a constellation of medical problems or just being disorganized, is incompetent to practice law. While this is a constant distraction for the court and opposing counsel, the court is more concerned that plaintiff will be materially prejudiced by his attorney's apparent incompetence. At a minimum, unless it is reasonably believed that counsel's performance will improve very soon, he should seriously consider associating with co-counsel who is experienced in litigating cases in federal court.[19]

Only three months after the court's stern admonishment of Mr. Gage in this case, he flagrantly disregarded the undersigned's order by filing plaintiff's motion to compel twelve hours and six minutes after the deadline, notably offering *no* explanation for the delay in filing the instant motion.  Then, after Ford filed its motion to strike and the undersigned specifically ordered no further briefing on these motion, Mr. Gage again disregarded that order and filed another motion for extension (doc. 135) in which he offers an explanation for the untimely filing of the motion to compel.

As noted by Judge Vratil in *Leaman*,[20] Mr. Gage has a reputation in this district for his dilatory handling of cases.  Notwithstanding continued warnings and the imposition of

---

[19] Doc. 81, at 2-3.

[20] No. 05-2565, doc. 18, at 2.

substantial sanctions in *Steinert*,[21] Mr. Gage continues to disregard deadlines, causing delay in these cases.  This is extremely frustrating to the court and opposing counsel.  But even more important, the court remains genuinely concerned that the parties, including of course Mr. Gage's clients who probably are in the dark about his mismanagement of cases, have been unduly prejudiced by these delays.

As to the motions now before the court, despite the foregoing procedural history, the dispositive facts are quite simple.  The undersigned entered an order setting a final deadline for Mr. Gage to file plaintiff's motion to compel, that being, noon on September 23, 2008.  Mr. Gage failed to timely file the motion.  The excuses offered by Mr. Gage are the same tired excuses he has offered time and time again.  His neglect in this case is not excusable but rather *inexcusable*.[22]  Plaintiff's motion to compel discovery from Ford is, therefore, denied as untimely.  Mr. Gage is forewarned that the undersigned will view any motion for reconsideration of this order as a further tactical delay and therefore, any such motion most likely will be summarily denied.

The motion filed by plaintiff on September 27, 2008 (doc. 135) seeks an extension to September 29, 2008 to assert technical objections to Weitz's expert witness disclosures, an extension until October 13, 2008 for plaintiff to disclose rebuttal expert testimony, and

---

[21] No. 98-2564, 2006 WL 3028249, at *2 (D. Kan. Oct. 11, 2006).

[22] Under Fed. R. Civ. P. 6(b)(1), "[w]hen an act may or must be done within a specified time, the court may for good cause shown, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

finally to extend the October 3, 2008 discovery cutoff to October 19, 2008.  As mentioned earlier, technically all of the requested extensions are opposed by both Ford and Weitz (*see* docs. 146 & 150), and plaintiff failed to file any timely reply brief.  Upon careful review of the parties' written submissions, it is clear that plaintiff has not shown good cause for any of the requested extensions.  But the record indicates that the first of the requested extensions is probably moot and that, in any event, it is not very seriously opposed by Weitz; evidently plaintiff served the subject objections not on September 29, 2008, but rather September 30, 2008.  In any event, plaintiff's motion is granted *only* to the extent it seeks an extension to assert technical objections to Weitz's expert witness disclosures.  In all other respects, the motion is denied.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1.     Plaintiff's motion for an extension of various deadlines (**doc. 135**) is granted in part and denied in part.

2.     Plaintiff's motion to compel discovery from Ford (**doc. 125**) is denied as untimely.

3.     Ford's motion to strike plaintiff's motion to compel as untimely (**doc. 127**) is granted.

4.     By way of formal complaint, a copy of this order will be sent by the undersigned judge to the Kansas Supreme Court's Office of the Disciplinary Administrator, with a request that the Disciplinary Administrator investigate whether Mr. Gage has violated

the Kansas Rules of Professional Conduct ("KRPC").  That is, for the reasons stated in this order, the undersigned judge respectfully submits that in this litigation Mr. Gage repeatedly has violated KRPC 1.1 (lawyer's duty of competence) and KRPC 1.3 (lawyer's duty of diligence).  And, although the undersigned makes no claim of being qualified to express any medical opinions, if one simply considers the record in this case and takes at face value Mr. Gage's above-described statements about suffering from "hyperfocused Adult ADD, PTSD, OCD, and chronic fatigue," there appears to be a serious question about whether Mr. Gage is so impaired that he should not represent clients in litigated matters.

Dated this 8th day of October 2008, at Kansas City, Kansas.


s/James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge